**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

(1) JOANN CHASE, (2) ESTATE OF )
NELSON FREDERICKS, (3) INEZ BURR, )
(4) SANDRA GILLETTE, (5) MARION )
RASMUSON, (6) JOAN MATTHEWS, (7) )
AMANDA BIRD BEAR, (8) ROGER BIRD )
BEAR, (9) THOMAS BIRD BEAR, (10) )
JAMIE LAWRENCE, (11) RAE ANN )
WILLIAMS, (12) EVELYN LONE BEAR, )            Civ. No. 5:18-cv-1050
(13) DOREEN CHARGING, (14) MAVIS )
HUBER, (15) BETTY YOUNG BIRD, (16) )          Class Action Complaint
NOREEN YOUNG BIRD, (17) JOAN )
YOUNG BIRD, (18) MURPHY YOUNG )
BIRD, (19) DONOVAN FAST DOG, (20) )
JOYCE EAKIN, (21) JOSEPHINE )
PARENTEAU, (22) GEORGE FAST DOG, )
(23) DENISE CAVANAUGH, (24) KAREN )
KOITE, (25) ARNOLD YOUNG BIRD, (26) )
DARRYL TURNER, (27) HEATHER )
DEMARAY, (28) DARLENE EDLEY, (29) )
EUNICE WHITE OWL, (30) LINDA )
KROUPA, (31) WAYLON YOUNG BIRD, )
(32) DEBORAH STAPLES, (33) )
ANTHONY WHITE OWL, (34) EUGENE )
WHITE OWL, (35) KATHLEEN WHITE )
OWL, (36) MARGO BEAN, (37) ALBERT )
WHITMAN, (38) HERBERT PLEETS, (39) )
MONIQUE PLEETS, (40) SHARON )
AUBOL, (41) JANET BENTON, (42) )
GLORIA FAST DOG, (43) VALERI HOSIE, )
(44) BETTY MATTHEWS, (45) KENNETH )
MATTHEWS SR., (46) SHERIDAN )
MATTHEWS, (47) WILSON WHITE OWL, )
and (48) TIFFANY WILLIAMS, )
)
                Plaintiffs, )
)
        v. )
)
ANDEAVOR LOGISTICS, L.P, )
ANDEAVOR, f/k/a TESORO )
CORPORATION, TESORO LOGISTICS, )
GP, LLC, TESORO COMPANIES, INC., )

and TESORO HIGH PLAINS PIPELINE          )
COMPANY, LLC,                                            )
                                                                   )
                    Defendants.                         )
                                                                   )

     Plaintiffs, on their own behalf and for all others similarly situated, by and

through their undersigned counsel, allege the following:

## INTRODUCTION

     1.     Defendants are a group of related companies that have their home

offices and operations in this District, specifically in San Antonio, Texas.

Defendants operate numerous oil and natural gas infrastructure projects across the

United States, including a crude-oil pipeline ("Pipeline") and related refinery near

Mandan, North Dakota. Defendants' pipeline runs across Plaintiffs' properties,

which are held in trust for Plaintiffs' benefit by the United States. Although

Defendants know that they do not have any valid easement to operate their

Pipeline, they have willfully continued to use Plaintiffs' land for their own monetary

benefit and without Plaintiffs' consent. Plaintiffs therefore bring this action to

recover damages and an accounting for profits from Defendants.

## <u>PARTIES</u>

     2.     Plaintiffs are each individual beneficial owners of surface interests in

allotted land at the Fort Berthold Reservation, over which Defendants' Pipeline

runs. As discussed in more detail below, Plaintiffs are informed and believe that

Defendants' Pipeline crosses more than 35 allotted tracts at Fort Berthold.

     3.     The Fort Berthold Reservation is located within the exterior

boundaries of the state of North Dakota. All of Plaintiffs' allotments, which are

described in more detail below, are held in trust by the federal government for the benefit of the Plaintiffs.  Under federal law, no right of way across Plaintiffs' allotments can be granted or renewed without the approval of the federal government and the consent of a majority of the beneficial interest holders in each allotment.

4.     Plaintiff JoAnn Chase is an enrolled member of the Three Affiliated Tribes, which is composed of the Hidatsa, Mandan, and Arikara Tribes, and is also referred to as the MHA Nation (hereafter "Three Affiliated Tribes"). Ms. Chase is formerly the Executive Director of the largest tribal organization, the National Congress of American Indians. Ms. Chase owns a beneficial interest in an allotment upon which Defendants' Pipeline runs.

5.     Plaintiff the Estate of Nelson Fredericks, holds a beneficial interest in an allotment upon which Defendants' Pipeline runs. Nelson Fredericks was an enrolled member of the Three Affiliated Tribes.

6.     Plaintiff Inez Burr is an enrolled member of the Three Affiliated Tribes, and owns a beneficial interest in an allotment upon which Defendants' Pipeline runs.

7.     Plaintiff Sandra Gillette is an enrolled member of the Three Affiliated Tribes, and owns a beneficial interest in an allotment upon which Defendants' Pipeline runs.

8.     Plaintiff Marion Rasmuson is an enrolled member of the Three Affiliated Tribes, and owns a beneficial interest in an allotment upon which Defendants' Pipeline runs.

9.     Plaintiff Joan Matthews is an enrolled member of the Three Affiliated Tribes, and owns a beneficial interest in an allotment upon which Defendants' Pipeline runs.

10.     Plaintiff Amanda Bird Bear is an enrolled member of the Three Affiliated Tribes, and owns a beneficial interest in an allotment upon which Defendants' Pipeline runs.

11.     Plaintiff Roger Bird Bear is an enrolled member of the Three Affiliated Tribes, and owns a beneficial interest in an allotment upon which Defendants' Pipeline runs.

12.     Plaintiff Thomas Bird Bear is an enrolled member of the Three Affiliated Tribes, and owns a beneficial interest in an allotment upon which Defendants' Pipeline runs.

13.     Plaintiff Jamie Lawrence is an enrolled member of the Three Affiliated Tribes, and owns a beneficial interest in an allotment upon which Defendants' Pipeline runs.

14.     Plaintiff Rae Ann Williams is an enrolled member of the Three Affiliated Tribes, and owns a beneficial interest in an allotment upon which Defendants' Pipeline runs.

15.     Plaintiff Evelyn Lone Bear is an enrolled member of the Three Affiliated Tribes, and owns a beneficial interest in an allotment upon which Defendants' Pipeline runs.

16.     Plaintiff Doreen Charging is an enrolled member of the Three Affiliated Tribes, and owns a beneficial interest in an allotment upon which Defendants' Pipeline runs.

17.     Plaintiff Mavis Huber is an enrolled member of the Three Affiliated Tribes, and owns a beneficial interest in an allotment upon which Defendants' Pipeline runs.

18.     Plaintiff Betty Young Bird is an enrolled member of the Three Affiliated Tribes, and owns a beneficial interest in an allotment upon which Defendants' Pipeline runs.

19.     Plaintiff Noreen Young Bird is an enrolled member of the Three Affiliated Tribes, and owns a beneficial interest in an allotment upon which Defendants' Pipeline runs.

20.     Plaintiff Joan Young Bird is an enrolled member of the Three Affiliated Tribes, and owns a beneficial interest in an allotment upon which Defendants' Pipeline runs.

21.     Plaintiff Murphy Young Bird is an enrolled member of the Three Affiliated Tribes, and owns a beneficial interest in an allotment upon which Defendants' Pipeline runs.

22.    Plaintiff Donovan Fast Dog is an enrolled member of the Three Affiliated Tribes, and owns a beneficial interest in an allotment upon which Defendants' Pipeline runs.

23.    Plaintiff Joyce Eakin is an enrolled member of the Three Affiliated Tribes, and owns a beneficial interest in an allotment upon which Defendants' Pipeline runs.

24.    Plaintiff Josephine Parenteau is an enrolled member of the Three Affiliated Tribes, and owns a beneficial interest in an allotment upon which Defendants' Pipeline runs.

25.    Plaintiff George Fast Dog is an enrolled member of the Three Affiliated Tribes, and owns a beneficial interest in an allotment upon which Defendants' Pipeline runs.

26.    Plaintiff Denise Cavanaugh is an enrolled member of the Three Affiliated Tribes, and owns a beneficial interest in an allotment upon which Defendants' Pipeline runs.

27.    Plaintiff Karen Koite is an enrolled member of the Three Affiliated Tribes, and owns a beneficial interest in an allotment upon which Defendants' Pipeline runs.

28.    Plaintiff Arnold Young Bird is an enrolled member of the Three Affiliated Tribes, and owns a beneficial interest in an allotment upon which Defendants' Pipeline runs.

29.    Plaintiff Darryl Turner is an enrolled member of the Three Affiliated Tribes, and owns a beneficial interest in an allotment upon which Defendants' Pipeline runs.

30.    Plaintiff Heather Demaray is an enrolled member of the Three Affiliated Tribes, and owns a beneficial interest in an allotment upon which Defendants' Pipeline runs.

31.    Plaintiff Darlene Edley is an enrolled member of the Three Affiliated Tribes, and owns a beneficial interest in an allotment upon which Defendants' Pipeline runs.

32.    Plaintiff Eunice White Owl is an enrolled member of the Three Affiliated Tribes, and owns a beneficial interest in an allotment upon which Defendants' Pipeline runs.

33.    Plaintiff Linda Kroupa is an enrolled member of the Three Affiliated Tribes, and owns a beneficial interest in an allotment upon which Defendants' Pipeline runs.

34.    Plaintiff Waylon Young Bird is an enrolled member of the Three Affiliated Tribes, and owns a beneficial interest in an allotment upon which Defendants' Pipeline runs.

35.    Plaintiff Deborah Staples is an enrolled member of the Three Affiliated Tribes, and owns a beneficial interest in an allotment upon which Defendants' Pipeline runs.

36.    Plaintiff Anthony White Owl is an enrolled member of the Three Affiliated Tribes, and owns a beneficial interest in an allotment upon which Defendants' Pipeline runs.

37.    Plaintiff Eugene White Owl is an enrolled member of the Three Affiliated Tribes, and owns a beneficial interest in an allotment upon which Defendants' Pipeline runs.

38.    Plaintiff Kathleen White Owl is an enrolled member of the Three Affiliated Tribes, and owns a beneficial interest in an allotment upon which Defendants' Pipeline runs.

39.    Plaintiff Margo Bean is an enrolled member of the Three Affiliated Tribes, and owns a beneficial interest in an allotment upon which Defendants' Pipeline runs.

40.    Plaintiff Albert Whitman is an enrolled member of the Three Affiliated Tribes, and owns a beneficial interest in an allotment upon which Defendants' Pipeline runs.

41.    Plaintiff Herbert Pleets is an enrolled member of the Three Affiliated Tribes, and owns a beneficial interest in an allotment upon which Defendants' Pipeline runs.

42.    Plaintiff Monique Pleets is an enrolled member of the Three Affiliated Tribes, and owns a beneficial interest in an allotment upon which Defendants' Pipeline runs.

43.    Plaintiff Sharon Aubol is an enrolled member of the Three Affiliated Tribes, and owns a beneficial interest in an allotment upon which Defendants' Pipeline runs.

44.    Plaintiff Janet Benton is an enrolled member of the Three Affiliated Tribes, and owns a beneficial interest in an allotment upon which Defendants' Pipeline runs.

45.    Plaintiff Gloria Fast Dog is an enrolled member of the Three Affiliated Tribes, and owns a beneficial interest in an allotment upon which Defendants' Pipeline runs.

46.    Plaintiff Valeri Hosie is an enrolled member of the Three Affiliated Tribes, and owns a beneficial interest in an allotment upon which Defendants' Pipeline runs.

47.    Plaintiff Betty Matthews is an enrolled member of the Three Affiliated Tribes, and owns a beneficial interest in an allotment upon which Defendants' Pipeline runs.

48.    Plaintiff Kenneth Matthews Sr. is an enrolled member of the Three Affiliated Tribes, and owns a beneficial interest in an allotment upon which Defendants' Pipeline runs.

49.    Plaintiff Sheridan Matthews is an enrolled member of the Three Affiliated Tribes, and owns a beneficial interest in an allotment upon which Defendants' Pipeline runs.

50.    Plaintiff Wilson White Owl is an enrolled member of the Three Affiliated Tribes, and owns a beneficial interest in an allotment upon which Defendants' Pipeline runs.

51.    Plaintiff Tiffany Williams is an enrolled member of the Three Affiliated Tribes, and owns a beneficial interest in an allotment upon which Defendants' Pipeline runs.

52.    All Plaintiffs bring this action on their own behalf and on behalf of all persons similarly situated, as is more fully set forth under the "Class Allegations" below.

53.    Defendant Andeavor Logistics, L.P. is a Delaware limited partnership with its principal place of business in San Antonio, Texas. Andeavor Logistics, L.P. gathers and transports crude oil by pipelines, including the pipeline at issue in this case, which connects to a refinery under common ownership and control by Andeavor in Mandan, North Dakota.

54.    Defendant Andeavor is a Delaware corporation with its principal place of business in San Antonio, Texas. Andeavor is the ultimate parent company for all of the Defendants, and all Defendants are operated out of the same headquarters office in San Antonio, Texas.

55.    Andeavor, through its subsidiaries, operates as a petroleum refining, logistics, and marketing company in the United States. Andeavor operates the Pipeline at issue in this case through its logistics arm, Andeavor Logistics, L.P. The

refinery to which the Pipeline supplies crude oil is operated by the refining segment of Andeavor's business.

56.    Andeavor was formerly known as Tesoro Corporation, and operated under that name for some of the time period at issue in this case. Tesoro Corporation changed its name to Andeavor in August 2017.

57.    Tesoro Logistics, GP, LLC is a subsidiary of Andeavor and operates out of Andeavor's offices in San Antonio, Texas. Andeavor and Tesoro Logistics are the largest partners in Andeavor Logistics, owning approximately 32.5% and 40.8% of Andeavor Logistics, respectively.

58.    Tesoro Companies, Inc. is a subsidiary of Andeavor that operates out of Andeavor's offices in San Antonio, Texas.

59.    Tesoro High Plains Pipeline Company, LLC is a Delaware limited liability company with its principal place of business co-located with Andeavor's offices in San Antonio, Texas. Tesoro High Plains is a subsidiary of Andeavor and is part of Andeavor's pipeline and logistics segment.

60.    Various Andeavor and Tesoro entities, including those listed above, have been identified as owning the Pipeline at issue in this case during the relevant time period. Due to changes in Andeavor's and Tesoro's corporate structure during that time, discovery is needed to identify which entities have owned and operated the Pipeline, or otherwise generated income and benefited from the Pipeline's operation while it has been in trespass on the Plaintiffs' land.

## JURISDICTION AND VENUE

61.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1331, as this action is for violation of the federal common law of trespass on Indian lands, pursuant to 25 U.S.C. § 345, and the present suit involves the interests and rights of the allottees in their allotments provided to them by Act of Congress.

62.     Venue is appropriate in this Court under 28 U.S.C. §§ 1391(a)(1), (a)(2), and (b)(1) because Defendants reside in this District.

## FACTUAL BACKGROUND

63.     Because of the special status of Native Americans as trust beneficiaries of the federal government, which acts as their trustee, and the long history of abuse of Indian land rights, rights-of-way and easements across federal trust land may be granted and renewed only as authorized by Congress.

64.     Congress has legislated that easements across Indian trust lands must be approved by the Secretary under 25 U.S.C. § 323. Further, for tribally owned land, easements cannot be approved or granted "without the consent of the proper tribal officials"; and for land allotted to individual Indians, easements can be approved or granted only if "the owners or owner of a majority of the interests therein consent to the grant." 25 U.S.C. § 324; *see also* 25 C.F.R. § 169.107 (requiring "prior written consent of the tribe," "prior written consent" of "the owner

or owners of a majority of the interests" in trust lands, and "approval of the Secretary").[1]

65.    Since 1993—in direct violation of these federal statutes and regulations—Defendants' crude oil Pipeline has been operated across Plaintiffs' trust land without approval from the landowners.

66.    The original easement for the Pipeline was approved on September 18, 1953, by the Bureau of Indian Affairs ("BIA"). The Pipeline was constructed shortly thereafter across multiple allotments, including allotments beneficially owned by Plaintiffs or their predecessors in interest.

67.    The original easement and all subsequent renewals (discussed below) were purportedly issued pursuant to 25 U.S.C. §§ 323–328 and Part 169, Title 25 of the Code of Federal Regulations.

68.    Pursuant to the controlling regulations, the easements for the Pipeline were limited to 20-year terms.

69.    Defendants or their predecessors in interest were also required to stipulate that they would "[r]estore the land to its original condition, to the maximum extent reasonably possible, upon cancellation or termination of the right-of-way, or reclaim the land if agreed to by the landowner." 25 C.F.R. § 169.125(c)(5)(ix)).[2]

---

[1] Previously 25 C.F.R. § 169.3(a), renumbered effective April 21, 2016, without substantive modification.
[2] Previously 25 C.F.R. § 169.5(i).

70.     The regulations required that any application to renew the easements for the Pipeline to be submitted before the easements expired by their own terms. 25 C.F.R. § 169.202(a)(4).[3]

71.     The easements for the Pipeline were purportedly renewed by the BIA on June 18, 1973, for an additional 20 year term.

72.     Upon information and belief, the 1973 Easement expired without being renewed. However, on February 7, 1995, the Superintendent for the BIA's Fort Berthold Agency purported to approve new easements effective retroactively from June 18, 1993 and continuing through June 18, 2013.

73.     Plaintiffs are further informed and believe that, while consent for the retroactive 1993 Easement was obtained from the Tribe for lands held in trust for the Tribe, consent was not obtained from a majority of the beneficial owners of the individually allotted tracts that the Pipeline crosses. Accordingly, the 1993 Easement was void *ab initio* as to the individually owned allotments.

74.     When the 1993 Easement was issued, the Pipeline was owned by Amoco Pipeline Company ("Amoco"). Sometime between 1993 and 2013 Defendants or their predecessors in interest acquired the Pipeline.

75.     Since acquiring the Pipeline, Defendants have operated it and a related refinery in Mandan, North Dakota.

76.     The operation of the Mandan refinery is dependent on the crude oil supplied by the Pipeline.

---

[3] Previously 25 C.F.R. § 169.19.

77.     Defendants benefit from the operation of both the Pipeline and the Mandan Refinery.

78.     The 1993 Easement, although invalid *ab initio*, expired by its own terms on June 18, 2013, without Defendants renewing or attempting to renew it.

79.     Defendants have not complied with the controlling regulations, which require them to remove the Pipeline from all of the subject tracts and to return the land to its original condition.

80.     Defendants also did not inform the individual allotted interest holders, many of whom were not owners when the 1973 or 1993 Easements were approved, that the easements to operate the Pipeline across Plaintiffs' land had expired.

81.     After the 1993 Easement expired by its own terms, Defendants entered into negotiations with the Three Affiliated Tribes to settle the Tribes' claims for trespass and to renew the easements across the Tribes' tracts.

82.     Defendants made no effort to contact the individual allottees, including Plaintiffs, to initiate similar negotiations.

83.     This failure is inexplicable because Defendants' Pipeline crosses only approximately 26 acres of land owned by the Three Affiliated Tribes but more than 60 acres of land beneficially owned by members of the putative class, including Plaintiffs.

84.     Upon information and belief, Defendants paid the Three Affiliated Tribes $2,000,000 per acre to renew the Pipeline easements in 2017.

85.     Defendants made no comparable offer to Plaintiffs or to any members of the putative class.

86.     In fact, Plaintiffs did not receive notice that the purported 1993 Easement had expired until January 30, 2018, when the BIA finally issued 10-Day Show-Cause Notices to Tesoro Companies, notifying Defendants that the BIA had determined the Pipeline had been in trespass at least since June 18, 2013— approximately four and a half years earlier.

87.     At all times since the 1993 Easement expired, Defendants have known that their Pipeline was in trespass on Plaintiffs' properties, but continued to operate the Pipeline without notifying Plaintiffs or attempting to obtain their consent for a new easement.

88.     After the BIA's Show-Cause letter was issued, Plaintiffs and Defendants entered into a brief period of good faith negotiations for a new easement. Those efforts were unsuccessful.

89.     Today, Defendants continue to willfully maintain and operate the Pipeline across Plaintiffs' property in violation of law and without compensation.

90.     Defendants and their predecessors in interest have therefore wrongfully used federal trust land. Defendants have benefitted financially at the expense of individuals of limited means, transporting millions of dollars of oil across Plaintiffs' land without compensation. Defendants' conduct constitutes a willful continuing trespass, entitling Plaintiffs to compensation for the unauthorized use of the property as well as punitive damages.

## CLASS ALLEGATIONS

91.    Plaintiffs, individually and on behalf of themselves and all persons similarly situated, seek class-wide relief for Defendants' unlawful conduct under Fed. R. Civ. P. 23(b)(1) and Fed. R. Civ. P. 23(b)(3).

92.    Plaintiffs seek to represent the following class of persons:

> **All individuals and estates that hold or have held beneficial surface interests in land held in trust by the United States located within the Fort Berthold Reservation, over which Defendants' Pipeline crosses, and for which the owners of a majority interest did not consent in writing to renew the right-of-way for the Pipeline since it was acquired by Defendants, or that withdrew their consent before a new right-of-way was approved.**

93.    The persons in this class are so numerous that joinder of all such individuals is impractical and the disposition of their claims as a class will benefit the parties and the Court. Plaintiffs are informed and believe that more than 35 allotted tracts are affected by Defendants' trespass, with a combined acreage of more than 60 acres, and more than 300 individual beneficial owners.

94.    Indian trust land is highly fractionated, meaning that the heirs of the original allottee own undivided interest in the allotment. According to the Department of Interior, "[m]any allotments now have hundreds and even thousands of individual owners." *See* https://www.doi.gov/buybackprogram/faq. This makes it "difficult, if not impossible, to use the land for any beneficial purpose." *Id*.

95.    Due to fractionation, some individual members of the putative class hold less than a 1% undivided interest in an allotted tract at issue in this case.

17

Many individual class members hold less than a 5% undivided interest in allotted tracts at issue.

96.    Plaintiffs are informed and believe that many of the allotted tracts over which Defendants' Pipeline crosses have more than ten owners, and some have in excess of 40 owners.

97.    There are common questions of law involving and affecting the class members to be represented because Defendants, on a class-wide basis, violated the same regulations and committed identical common-law trespasses against each of the class members.

98.    There are common questions of fact involving and affecting the class members to be represented because Defendants took the same relevant actions and inactions with respect to the beneficial owners of the land over which Defendants' Pipeline runs, and the trespasses against each allotted tract commenced on the same date.

99.    The claims that Plaintiffs allege herein are typical of the claims that would be alleged by any member of the class and the relief sought is typical of the relief that would be sought by each member of the class in separate actions.

100.    Plaintiffs and their counsel will fairly and adequately represent and protect the interests of all members of the class.

   a.    Keith M. Harper, who will be serving as lead counsel and whose application for admission into the District Court for the Western District of Texas is currently pending, is an experienced federal court

18

litigator and has represented Indian Tribes and individual Indians in numerous matters, including serving as class counsel representing a class of 500,000 individual Indians in *Cobell v. Salazar*, Civ. No. 96-1285 (D.D.C.)—a breach of trust lawsuit against the federal government that settled in 2009 for $3.4 billon.

b.  Jason P. Steed is an experienced federal appellate attorney who has represented clients in several large class actions and has written several articles on class-action issues, including a 2011 article that has been cited in the Yale Law Journal, Penn State Law Review, Kentucky Law Journal, Villanova Law Review, and Fordham Law Review.

c.  Dustin T. Greene is an experienced federal court litigator who has represented Indian Tribes and individual Indians in several matters, including serving as lead counsel in *Davilla v. Enable Midstream Partners, L.P., et al.*, No. CIV-15-1262-M (W.D. Okla.)—a federal common law trespass case that resulted in a permanent injunction order directing the removal of a natural gas pipeline from an Indian allotment.

d.  Lawrence S. Roberts is an experienced federal Indian law attorney who started his legal career as a trial attorney in the United States Department of Justice, Environment and Natural Resources Division, litigating trespass and other Indian law matters on behalf of the United States and tribes. During his time in private practice, he has

represented tribes on a variety of Indian law matters, including tribal
land claims.

e.  Stephen M. Anstey is a federal court litigator with an LL.M. from
Harvard Law School focused on federal Indian law and class actions.
Mr. Anstey has experience representing Indian tribes and individual
Indians in oil and gas matters and federal land rights cases dealing
with both surface land use and mineral rights.

101.    The members of the class are ascertainable through Defendants'
records and through the records of the Bureau of Indian Affairs.

102.    Notice to the class is possible because the class members can be
identified and provided notice through documents maintained by Defendants and by
the Bureau of Indian Affairs, or through publication or other reasonable means.

103.    The prosecution of separate actions by individual members of the class
would create the risk of inconsistent or varying adjudications that would establish
incompatible standards of conduct for Defendants, and would, as a practical matter,
be dispositive of the interests of other class members that are not parties to those
individual adjudications. Individual adjudications would also impair or impede
individual class members' ability to protect their interests.

104.    The common questions of law and fact in this case predominate over
any questions affecting only individual class members, and a class action is superior
to other available methods for fairly and efficiently adjudicating this controversy.

105.    Class members are unlikely to have an interest in controlling separate actions given the common questions of fact at issue and the typicality of the class representatives' claims. That said, it is the intent that class members will be offered the opportunity to opt out of these proceedings if they so choose.

106.    There are currently no other cases pending concerning Defendants' trespass through the operation of the Pipeline.

107.    Concentrating the litigation of these claims in this class action is desirable because of the highly fractionated nature of the ownership interests in the affected trust land, and because many class members will not be able to prosecute individual claims because of their small ownership interests.

108.    The case is manageable because, among other reasons, the issue of whether Defendants have committed trespass across allotted Indian trust land under federal common law will predominate over any other issues in this case.

### COUNT I
### Continuing Trespass
### (By Plaintiffs individually and on behalf of
### all those similarly situated, against Defendants)

109.    Plaintiffs re-allege the foregoing paragraphs as though fully set forth herein.

110.    Upon information and belief, the 1993 Easement was invalid and void *ab initio* because the beneficial owners of the allotments did not consent to that easement. Accordingly, the Pipeline has been in trespass since 1993 and for the entire time Defendants have owned it.

111.   Additionally, after the 1993 Easement expired by its own terms in 2013, Defendants knowingly and wrongfully continued to make unauthorized use of Plaintiffs' land for their own economic benefit despite the requirement in the regulations (which are incorporated into all of the easements that have been issued for the Pipeline) that they remove the Pipeline from Plaintiffs' property and return the land to its original condition.

112.   Defendants' conduct constitutes a continuing trespass upon Plaintiffs' land in violation of the controlling statutes, regulations, and federal common law.

113.   Plaintiffs have been damaged by Defendants' trespass in an amount to be determined at trial.

114.   By reason of Defendants' continuing trespass upon Plaintiffs' land, Plaintiffs are entitled to compensatory damages from Defendants and an accounting of the profits Defendants have earned from their illegal operation of the Pipeline, including all profits earned directly or indirectly from the operation of the Pipeline. This includes but is not limited to transportation fees Defendants have earned directly from the Pipeline, and also the profits earned by the Mandan refinery, because the refinery's operations are dependent on crude oil supplied by the Pipeline.

115.   Under federal common law, Defendants are required to disgorge to Plaintiffs a pro rata share of the profits they have earned in connection with the Pipeline since the trespass first accrued.

116.    Moreover, since the expiration of the 1993 Easement in 2013, Defendants' conduct has been particularly egregious. They have taken advantage of Plaintiffs' limited means and refused to deal with them reasonably, fairly, and in good faith, continuing to reap substantial economic benefits from the use of the land without compensation. Defendants' conduct evidences a reckless and wanton disregard of Plaintiffs' rights, by reason of which Plaintiffs are entitled to punitive damages.

## COUNT II
### Constructive Trust
### (By Plaintiffs individually and on behalf of
### all those similarly situated, against Defendants)

117.    Plaintiffs re-allege the foregoing paragraphs as though fully set forth herein.

118.    Alternatively or additionally, the Court should impose a constructive trust on the profits earned by Defendants in connection with the operation of the Pipeline while it has been in trespass, and for such time that the Pipeline remains in trespass after this action is filed.

119.    There is a compelling federal interest in preventing and deterring trespass on Indian trust land, given that our history is rife with abuses of Indian land rights.

120.    Since their acquisition of the Pipeline, and additionally since June 18, 2013, Defendants have had no legal right to operate the Pipeline on Plaintiffs' land. Yet Defendants have nonetheless unlawfully operated the Pipeline on Plaintiffs' land.

121.    It would be inequitable and would result in the unjust enrichment of Defendants if they were allowed to retain the profits they earned from the operation of the Pipeline while it was operated illegally across Plaintiffs' land.

122.    Accordingly, a pro rata share of any profits attributable to the Pipeline are in equity held by Defendants in trust for Plaintiffs, and should be paid over to Plaintiffs.

123.    Thus, the Court should impose a constructive trust for the benefit of Plaintiffs on a pro rata share of the profits Defendants have earned from the operation of—or in connection with—the Pipeline, while it has been in trespass.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray:

A.    that the Court issue an order holding that this action is properly maintainable as a class action and certifying Plaintiffs as representatives of the class;

B.    that the Court appoint Kilpatrick Townsend & Stockton LLP, and the undersigned attorneys for Plaintiffs as counsel for the class;

C.    that compensatory damages in an amount to be established at trial be awarded against Defendants jointly and severally;

D.    that Defendants be ordered to account for and disgorge to Plaintiffs and the class the profits made from the operation of the Pipeline during the trespass period;

E.     that the Court impose a constructive trust on the profits Defendants have made from the operation of the Pipeline during the trespass period for the benefit of Plaintiffs and the class;

F.     that punitive damages be awarded in an amount to be determined at trial;

G.     that Plaintiffs be awarded their reasonable attorneys' fees and the costs and expenses of this action, as allowed by law;

H.     that pre- and post-judgment interest be awarded as allowed by law; and

I.     that Plaintiffs and the class be granted such other and further legal and equitable relief as may be found appropriate, just, and proper.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Plaintiffs hereby demand a trial by jury of all issues so triable.

Respectfully submitted this 5th day of October, 2018.

s/ Jason P. Steed

Keith M. Harper (DC Bar No. 451956)
*Application for admittance pending*
Lawrence S. Roberts (DC Bar No. 480558)
*Application for admittance pending*
Stephen M. Anstey (DC Bar No. 1048793)
*Application for admittance pending*
Kilpatrick Townsend & Stockton LLP
607 14th Street, NW, Suite. 900
Washington, DC 20005-2018
Telephone: (202) 508-5844
Facsimile: (202) 315-3241

Email: kharper@kilpatricktownsend.com

Dustin T. Greene (NC Bar No. 38193)
*Application for admittance to be submitted*
Kilpatrick Townsend & Stockton LLP
1001 W. Fourth Street
Winston-Salem, NC 27101
Telephone: (336) 607-7300
Facsimile: (336) 607-7500
Email: dgreene@kilpatricktownsend.com

Jason P. Steed (TX Bar No. 24070671)
Kilpatrick Townsend & Stockton LLP
2001 Ross Avenue Suite 4400
Dallas, TX USA 75201
Telephone: (214) 922-7112
Facsimile: (241) 583-5731
Email: jsteed@kilpatricktownsend.com

*Attorneys for Plaintiffs*